Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
Melissa J. Levine
mlevine@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*Supercell Oy*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUPERCELL OY, <br><br> *Plaintiff* <br><br> v. <br><br> ANXIZHILANGSHANGMAOYOUXI, AUREIA, BAOYIMAOYI, BHMT TRADE, BOPENG, BORDERLESSBAZAAR, BRAVE BIRD, ERETHI TOYS CO.,LTD, FEHIZHIFEN, FEIYIGOU, FFANTACY, GECHENGCLOTHING, GUANGZHOUGERANSHANGMAOYOUXIANGONGSI, GZHH LLC, HONGDONGXIANPINGCHENKEJI, HONGYOHE a/k/a TKBABEUE, HOUXUKAISHANGMAOYOUXIAN, HYSMT, JGTUY, JINZHAOYOUJIU, KDCHAOW, KEVCHE CO.,LTD, LIN LEI, LYNDZGS, LYRASUN TOYS&DECOR SHOP, PLAYLANDIA, RIDICULOUS BASTARD, SAVE MONEY 2 U, SHENGHU TRADING CO., LTD, WEIWEIGTBBVPPL, WOEIOI, XIANSIQING, XINGYISHIHUIHUIKEJIYOUXIANGONGSI, YINCHUANBAIFUDIANZISHANGWU a/k/a | **CIVIL ACTION NO.** <br><br><br> <u>**COMPLAINT**</u> <br><br> **Jury Trial Requested** <br><br> **FILED UNDER SEAL** |

HOLIDAY HAVEN, YSHUAKA, YTTMSHDGA, YUYXEDC, 玉娥达 a/k/a YU'EDA, 王盼888 a/k/a WANG PAN 888 and 阿震的铺子 a/k/a AH ZHEN'S SHOP,

*Defendants*

**GLOSSARY**

| Term | Definition |
|---|---|
| **Plaintiff or Supercell Oy** | Supercell Oy |
| **Defendants** | Anxizhilangshangmaoyouxi ,Aureia, baoyimaoyi, BHMT TRADE, BOPENG, BorderlessBazaar, Brave Bird, ERETHI Toys Co.,LTD, FehiZhiFen, Feiyigou, Ffantacy, GeChengClothing, guangzhougeranshangmaoyouxiangongsi, GZHH LLC, hongdongxianpingchenkeji, HONGYOHE a/k/a TKBABEUE, houxukaishangmaoyouxian, HYSMT, JGTUY, JINZHAOYOUJIU, kdchaow, KEVCHE Co.,Ltd, Lin Lei, LYNDZGS, Lyrasun Toys&Decor Shop, PlayLandia, Ridiculous Bastard, Save Money 2 U, Shenghu Trading Co., LTD, WEIWEIGTBBVPPL, woeioi, xiansiqing, xingyishihuihuikejiyouxiangongsi, yinchuanbaifudianzishangwu A/K/A Holiday Haven, YSHUAka, Yttmshdga, YUYXEdc, 玉娥达 a/k/a Yu'eda, 王盼888 a/k/a Wang Pan 888 and 阿震的铺子 a/k/a Ah Zhen's shop |
| **Amazon** | Amazon.com, a Seattle, Washington-based, online marketplace and e-commerce platform owned by Amazon.com, Inc., a Delaware corporation, that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products, which, upon information and belief, primarily originate from China, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York |
| **Walmart Marketplace** | Walmart.com Marketplace, a Bentonville, Arkansas-based, online marketplace and e-commerce platform owned by Walmart Stores, Inc., a Delaware corporation, that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products, which, upon information and belief, primarily originate from China, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *ex parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an |

| | order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
|---|---|
| **Ignatius Dec.** | Declaration of Markku Ignatius in Support of Plaintiff's Application |
| **Nastasi Dec.** | Declaration of Gabriela N. Nastasi in Support of Plaintiff's Application |
| **Brawl Stars Game** | A multiplayer game that allows users to pick characters with special abilities, called "Brawlers," to battle against other players using a combination of strategy and teamwork |
| **Brawl Stars Products** | A variety of products featuring characters from the Brawl Stars Game using and/or sold in connection with the Brawl Stars Marks, including, but not limited to, apparel, keychains, stationery, accessories, backpacks, and plush toys |
| **Brawl Stars Marks** | U.S. Trademark Registration Nos.: 5,567,901 for "BRAWL STARS" for a variety of goods in Classes 16, 25 and 28 and 6,914,997 for "BRAWL" for a variety of goods in Classes 16, 25 and 28 |
| **Counterfeit Products** | Products bearing or used in connection with the Brawl Stars Marks and/or marks that are confusingly similar to the Brawl Stars Marks, and/or products in packaging and/or with labeling bearing the Brawl Stars Marks and/or marks that are confusingly similar to the Brawl Stars Marks, and/or products that are identical or confusingly similar to the Brawl Stars Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Amazon and/or Walmart Marketplace, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or |

| | |
|---|---|
| | Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | Amazon.com, Inc., Amazon Payments, Inc. ("Amazon Pay"), PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer") and PingPong Global Solutions, Inc. ("PingPong") |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly, by Amazon and/or Walmart Marketplace, such as Amazon.com and/or Walmart.com, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

Plaintiff, a private limited company organized and existing under the laws of Finland, by and through its undersigned counsel, alleges as follows:[1]

## NATURE OF THE ACTION

1.      This action involves claims for trademark infringement of Plaintiff's federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq*.; counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d); false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); and related state and common law claims, arising from the infringement of the Brawl Stars Marks, including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Plaintiff's Brawl Stars Products by Defendants.

## JURISDICTION AND VENUE

2.      This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this action as to form part of the same case or controversy.

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

3.     Personal jurisdiction exists over Defendants in New York pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York, and/or derive substantial revenue from their business transactions in New York and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in New York such that Defendants should reasonably expect such actions to have consequences in New York, for example:

a.     Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as Amazon and/or Walmart Marketplace, as well as any and all as yet undiscovered User Accounts, through which consumers in the U.S., including New York, can view one or more of Defendants' Merchant Storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

b.     Upon information and belief, Defendants are sophisticated sellers, each operating one or more commercial businesses through their respective User Accounts, using their Merchant Storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the

Counterfeit Products at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically New York.

      c.    Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address.

      d.    Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

      e.    Upon information and belief, Defendants are aware of Plaintiff, its Brawl Stars Products and Brawl Stars Marks, and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Plaintiff in the U.S. and specifically, in New York.

4.    Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact and/or solicit business in New York.

## **THE PARTIES**

5.    Plaintiff Supercell Oy is a private limited company organized and existing under the laws of Finland with an address of Jätkäsaarenlaituri 1, 00180, Helsinki, Finland.

6.    Upon information and belief, Defendants are merchants on the Amazon and/or Walmart Marketplace online marketplace platforms, through which Defendants offer for sale and/or sell Counterfeit Products, with principal places of business at the addresses identified, if any, in the screenshots of Defendants' Merchant Storefronts in **Exhibit A**.

## **GENERAL ALLEGATIONS**
### **Plaintiff and Its Well-Known Brawl Stars Products**

7.    Supercell is a leading global game development company that designs and

develops engaging multiplayer and social games, including, but not limited to: Brawl Stars, Hay Day, Clash of Clans, Boom Beach and Clash Royale

8.    One of Supercell's most popular games is Brawl Stars, a multiplayer game that allows users to pick characters with special abilities, called "Brawlers," to battle against other players using a combination of strategy and teamwork.

9.    Released in 2018, Brawl Stars generated 30.8 million downloads during its first month of release2 and became Supercell's second highest grossing game across its game portfolio in 2020, accumulating around $526 million.3

10.    Additionally, despite the ultra-competitive landscape, in 2020, Supercell remained "among the top 10 most successful publishers on the iPhone and Android app stores."[4]

11.    Currently, consumers are still downloading Brawl Stars, with 6.48 million downloads worldwide in December 2024.[5]

12.    In addition to developing the Brawl Stars Game, Supercell has created several key strategic partnerships with numerous licensees ("Authorized Licensees") as part of its extensive global licensing program for consumer merchandise, including a variety of products featuring its characters and using and/or sold in connection with the Brawl Stars Marks, which include innovative product lines across multiple consumer product categories.

13.    While Supercell has gained significant common law trademark and other rights in Brawl Star Products through use, advertising, and promotion, Supercell has also protected its

---

[2]J. Clement, *Number of Brawl Stars app downloads worldwide from December 2018 to December 2024*, STATISTA (Jan. 10, 2025), https://www.statista.com/statistics/1358813/global-brawl-stars-downloads/.
[3] Craig Chappie, *Supercell Celebrates Another Unicorn as Brawl Stars Passes $1 Billion*, SENORTOWER (Jan. 2021), https://sensortower.com/blog/brawl-stars-revenue-one-billion.
[4] Tim Bradshaw, *Supercell profits slide again despite mobile gaming boom*, THE FINANCIAL TIMES (Feb. 16, 2021), https://www.ft.com/content/aa0c5b43-e2c5-48ea-9fc3-843ef0d053c0.
[5] J. Clement, *Number of Brawl Stars app downloads worldwide from December 2018 to December 2024*, STATISTA (Jan. 10, 2025), https://www.statista.com/statistics/1358813/global-brawl-stars-downloads/.

valuable trademark rights to the Brawl Stars Game and Brawl Stars Products by filing for and obtaining federal trademark registrations.

14.    For example, Supercell is the owner of the following U.S. Trademark Registration Nos.: 5,567,901 for "BRAWL STARS" for a variety of goods in Classes 16, 25 and 28 and 6,914,997 for "BRAWL" for a variety of goods in Classes 16, 25 and 28. True and correct copies of the registration certificates for the Brawl Stars Marks are attached hereto as **Exhibit B** and incorporated herein by reference.

15.    The Brawl Stars Marks were first used in commerce on or before the dates of first use as reflected in the registrations attached hereto as **Exhibit B**.

16.    Supercell has spent substantial time, money, and effort building up and developing consumer recognition, awareness and goodwill in its Brawl Star Products and Brawl Stars Marks.

17.    Supercell's success is also due to its use of the highest quality materials and processes in making the Brawl Stars Products.

18.    Additionally, Supercell owes a substantial amount of the success of the Brawl Stars Game and Brawl Stars Products to its consumers, and word-of-mouth buzz that its consumers have generated.

19.    Supercell's efforts, the quality of its Brawl Stars Game and Brawl Stars Products, its marketing, promotion and distribution efforts, and the word-of-mouth buzz generated by its consumers have caused the Brawl Stars Marks to be prominently placed in the minds of the public. Members of the public and retailers have become familiar with Supercell's Brawl Stars Marks, Brawl Stars Game and Brawl Stars Products and have come to associate them exclusively with Supercell.

20.    As a result of such associations, the Brawl Stars Marks have acquired a valuable

reputation and goodwill among the public.

21.    Supercell has gone through great lengths to protect its interests in the Brawl Stars Marks.  No one other than Supercell and its Authorized Licensees are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the Brawl Stars Marks.

### Amazon, Walmart Marketplace and Defendants' User Accounts

22.    Amazon and Walmart Marketplace are online marketplaces and e-commerce platforms that allow manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products originating primarily from China, among other locations, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York.

23.    Specifically, Amazon is recognized as one of the leaders of the worldwide e-commerce and digital retail market and the company's net sales were $148 billion in the second quarter of 2024.[6] Sales to the U.S. make up a significant percentage of the business done on Amazon.[7] As of March 17, 2025, Amazon had a market capital of $2.07 trillion, making it the fourth most valuable company in the U.S.[8]

24.    Many of the third-party merchants that have User Accounts with and operate Merchant Storefronts on Amazon, like Defendants, are located in China, who recently accounted for nearly half of all businesses on Amazon.[9]

25.    In Q1 of 2024, third party merchants generated $34.6 billion, accounting for 61%

---

[6]    *Amazon.com Announces Second Quarter Results,* BUSINESS WIRE (Aug. 1, 2024), https://finance.yahoo.com/news/amazon-com-announces-second-quarter-200100339.html.
[7] *See* Amazon.com, Inc., Quarterly Results Q2 Earnings (Form 10-Q) (Aug. 1, 2024).
[8] STOCK ANALYSIS (last visited Mar. 17, 2025), https://stockanalysis.com/stocks/amzn/market-cap/.
[9] John Herrman, *The Junkification of Amazon Why does it feel like the company is making itself worse?*,  NEW YORK MAGAZINE (Jan. 30, 2023), https://nymag.com/intelligencer/2023/01/why-does-it-feel-like-amazon-is-making-itself-worse.html.

of Amazon's sales.[10] In Q2 of 2024, third party merchants generated $36.2 billion, growing approximately 13% on a year-over-year basis.[11]

26.    Amazon aggressively uses the Internet and television, to market itself and the products offered for sale and/or sold by its third-party merchant users to potential consumers, particularly in the U.S. In 2023 alone, Amazon spent $44.4 billion on marketing, up from $42.3 billion the previous year.[12]

27.    As reflected in the federal lawsuits filed against third-party merchants offering for sale and selling infringing and/or counterfeit products on Amazon,[13] and as recently addressed in news reports, an astronomical number of counterfeit and infringing products are offered for sale and sold on Amazon at a rampant rate.[14]

28.    Similarly, many of the third-party merchants that have User Accounts with and operate Merchant Storefronts on Walmart Marketplace, like Defendants, are located in China. As of June 2022, Walmart Marketplace had a reported 151,820 sellers, up more than 60% from 2021.[15]

---

[10] Daniela Coppola, *Quarterly value of Amazon third-party seller services 2017-2024,* STATISTA (May 7, 2024), https://www.statista.com/statistics/1240236/amazon-third-party-seller-services-value/#:~:text=Amazon%27s%20net%20sales%20generated%20through%20its%20third-party%20seller,fees%20and%20other%20services%20related%20to%20third-party%20sellers, Daniela Coppola, *Share of paid units sold by third-party sellers on Amazon platform from 2nd quarter 2007 to 1st quarter 2024,* STATISTA (Jul. 11, 2024), https://www.statista.com/statistics/259782/third-party-seller-share-of-amazon-platform/.
[11] *Id.*
[12] Daniela Coppola, *Worldwide Amazon marketing expenditure 2010-2023,* STATISTA (Feb. 8, 2024), https://www.statista.com/statistics/506535/amazon-marketing-spending/#:~:text=In%20the%20fiscal%20year%202023%2C%20Amazon%E2%80%99s%20marketing%20spending,42.3%20billion%20U.S.%20dollars%20in%20the%20previous%20year.
[13] *See, e.g., Apple Inc. v. Mobile Star LLC,* No. C17-1120 RAJ (W.D. Cal. Aug. 4, 2017) and *Daimler AG v. Amazon.com, Inc.*, 16-cv-00518-RSM (W.D. Wash. Mar. 11, 2019).
[14] Brittney Myers, *Some Shoppers Are Fleeing Amazon Because of Counterfeit Goods*, THE ASCENT (Jan. 17, 2023), https://www.fool.com/the-ascent/personal-finance/articles/some-shoppers-are-fleeing-amazon-because-of-counterfeit-goods/; *see* Brendan Case, *Amazon, Third-Party Sellers Spur Fake Goods, Group Says*, BLOOMBERG (Oct. 13, 2021), https://www.bloomberg.com/news/articles/2021-10-13/amazon-third-party-sellers-spur-counterfeit-boom-group-says#xj4y7vzkg.
[15] *See* Kim Souza, *The Supply Side: Walmart Marketplace aims to attract more third-party sellers,* TALK BUSINESS (Sept. 16, 2023), https://talkbusiness.net/2023/09/the-supply-side-walmart-marketplace-aims-to-attract-more-third-party-sellers/.

29.    In early 2021, Walmart Marketplace started to attract non-U.S. merchants to sell products on its e-commerce marketplace.[16]

30.    Walmart Marketplace has recently expanded its efforts to onboard new Chinese sellers with its release of a Seller Central dashboard interface in Chinese in February 2024 and its holding of a seller summit in Shenzhen, China in March 2024.[17] In April 2024, Chinese sellers represented 73.8% of all new sellers on Walmart Marketplace.[18]

31.    As reflected in the federal lawsuits filed against third-party merchants offering for sale and selling infringing and/or counterfeit products on Amazon, and as recently addressed in news reports, an astronomical number of counterfeit and infringing products are offered for sale and sold on Amazon and Walmart Marketplace at a rampant rate.[19]

32.    Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their User Accounts and on their Merchant Storefronts on Amazon and/or Walmart Marketplace as well as potentially yet undiscovered additional online marketplace platforms.

33.    Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

---

[16] *Id.*

[17] *See* Cyrus Farivar, *Walmart Is Finally Capitalizing on Amazon and Temu's China Playbook*, FORBES (Jun. 26, 2024), https://www.forbes.com/sites/cyrusfarivar/2024/06/26/walmart-is-finally-capitalizing-on-amazon-and-temus-china-playbook/.

[18] *Id.*

[19] *See* Bo Erickson, *Popular goods sold through Amazon, Walmart and others are counterfeits: Government report*, CBS NEWS (Feb. 26, 2018), https://www.cbsnews.com/news/amazon-walmart-newegg-third-party-sellers-sell-counterfeits-report-gao/; *see* Kali Coleman, *There's an Urgent New Warning for Walmart and Amazon Shoppers, Experts Say That Walmart and Amazon Shoppers May Be at Risk of Buying Counterfeit Items*, YAHOO! LIFE (Dec. 17, 2021), https://www.yahoo.com/lifestyle/theres-urgent-warning-walmart-amazon-213820337.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_referrer_sig=AQ AAAJz5iddTqBfqAeScux7woYr04sXjjpXcyr76uzMNLVJq0doJEDsbjYhhU2cdgzqBETvMmWtDSmEiISEORZvr 0XY8qu3kuqov5tpHecz2sNErE6X0oprVTR14_7uEGpNL91UIuNPajklpf5ZEfBoWE_pVDVSsBWHcsG_U36bU8 a.

34.    Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale.

35.    Defendants are in constant communication with each other and regularly participate in online chatroom discussions involving illegal counterfeiting activities, pending litigation and potential new lawsuits.

### **Defendants' Wrongful and Infringing Conduct**

36.    Particularly in light of Plaintiff's success with its Brawl Stars Game and Brawl Stars Products, as well as the reputation they have gained, Plaintiff and its Brawl Stars Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiff has amassed in its Brawl Stars Game, Brawl Stars Products and Brawl Stars Marks and Plaintiff investigates and enforces against such activities.

37.    Through Epstein Drangel's investigative and enforcement efforts, Plaintiff learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers, including those located in the state of New York, through Defendants' User Accounts and Merchant Storefronts. Screenshots of Infringing Listings from Defendants' User Accounts and Merchant Storefronts are included in **Exhibit A** attached hereto and incorporated herein by reference.

38.    Defendants are not, and have never been, authorized by Plaintiff or any of its authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the Brawl Stars Products or to use the Brawl Stars Marks, or any marks that are confusingly similar to the Brawl Stars Marks.

39.    Defendants' Counterfeit Products are nearly indistinguishable from Plaintiff's

Brawl Stars Products, only with minor variations that no ordinary consumer would recognize.

40.    During its investigation, Epstein Drangel identified Defendants as offering for sale and/or selling Counterfeit Products and specified a shipping address located at the New York Address and verified that each Defendant provides shipping to the New York Address. Screenshots of the checkout pages for the Counterfeit Products and pages from Defendants' Merchant Storefronts reflecting that the Defendants ship the Counterfeit Products to the New York Address are included in **Exhibit A**.

41.    Epstein Drangel confirmed that each Defendant is still currently offering for sale and/or selling Counterfeit Products through their respective User Accounts and/or Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars and that each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York. Plaintiff's findings are supported by Defendants' Infringing Listings and/or the checkout pages for Counterfeit Products, which are included in **Exhibit A**.

42.    For example, below is a listing for Defendant woeioi's Counterfeit Product ("woeioi Infringing Listing" and "woeioi Counterfeit Product," respectively). The woeioi Infringing Listing appears on Defendant woeioi's Merchant Storefront, https://www.walmart.com/global/seller/101662936, and offers the woeioi Counterfeit Product for $6.84 per item, using, featuring and/or incorporating one or more of the Brawl Stars Marks and/or confusingly similar marks in the descriptions and/or product images in the body of the listing title: "HeaDream 50PCS **Brawl Stars** Series Stickers, Cartoon Style Laptop Stickers Waterproof Luggage Decal, Great Choice Birthday Gifts for Anime Fans" (emphasis added). Further, the woeioi Counterfeit Product is virtually identical to characters and images featured in the Brawl

Stars Game. There is no question that the woeioi Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Brawl Stars Products or that the woeioi Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Brawl Stars Marks:

| **Image from Brawl Stars Game** | **Defendant's Counterfeit Product** |
|:---:|:---:|
|  |  |

43. By way of another example, below is a listing for xingyishihuihuikejiyouxiangongsi's Counterfeit Product ("xingyishihuihuikejiyouxiangongsi Infringing Listing" and "xingyishihuihuikejiyouxiangongsi Counterfeit Product," respectively). The xingyishihuihuikejiyouxiangongsi Infringing Listing appears on Defendant xingyishihuihuikejiyouxiangongsi's Merchant Storefront, https://www.amazon.com/s?me=AZGWZQOJ0KW0F, and offers the xingyishihuihuikejiyouxiangongsi Counterfeit Product for $18.99 per item, using, featuring and/or incorporating one or more of the Brawl Stars Marks and/or confusingly similar marks in the descriptions and/or product images in the body of the listing title: "**Brawl** Merch Stars Birthday Decorations Spike Game Theme Party Supplies including Cake Topper Nammer Cupcake Toppers Balloons" (emphasis added). Further, the xingyishihuihuikejiyouxiangongsi Counterfeit

Product is virtually identical to characters and images featured in the Brawl Stars Game. There is no question that the xingyishihuihuikejiyouxiangongsi Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Brawl Stars Products or that the xingyishihuihuikejiyouxiangongsi Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Brawl Stars Marks:

| **Image from Brawl Stars Game** | **Defendant's Counterfeit Product** |
| :---: | :---: |
|  |  |

44.    As another example, below is a listing for Defendant  YSHUAka Counterfeit Product ("YSHUAka Infringing Listing" and "YSHUAka Counterfeit Product," respectively). The YSHUAka Infringing Listing appears on Defendant YSHUAka Merchant Storefront, https://www.walmart.com/global/seller/102482082, and offers the YSHUAka Counterfeit Product for $16.09 per item, using, featuring and/or incorporating one or more of the Brawl Stars Marks and/or confusingly similar marks in the descriptions and/or product images in the body of the listing title "**Brawl Stars** Spike Doll Colt, Plush Buddies 7 Inch Tall Collectibles Plush Toy Doll | Crow Plush| Licensed Toy Plush, On Sale Clearance!" (emphasis added). Further, the YSHUAka Counterfeit Product is virtually identical to characters and images featured in the Brawl Stars Game. There is no question that YSHUAka Counterfeit Product is designed to confuse and mislead

consumers into believing that they are purchasing one of Plaintiff's Brawl Stars Products or that the YSHUAka Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Brawl Stars Marks:

| **Image from Brawl Stars Game** | **Defendant's Counterfeit Product** |
|---|---|
|  |  |

45.     By these dealings in Counterfeit Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products), Defendants violated Plaintiff's exclusive rights in the Brawl Stars Marks, and have used marks that are confusingly similar to, identical to and/or constitute counterfeiting and/or infringement of the Brawl Stars Marks in order to confuse consumers into believing that such Counterfeit Products are the Brawl Stars Products and aid in the promotion and sales of their Counterfeit Products. Defendants' conduct began long after Plaintiff's adoption and use of the Brawl Stars Marks, after Plaintiff obtained federal registrations in the Brawl Stars Marks, as alleged above, and after Plaintiff's Brawl Stars Products and the Brawl Stars Marks became well-known to the purchasing public.

46.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the Brawl Stars Marks, of

the fame and incalculable goodwill associated therewith and of the popularity and success of the Brawl Stars Products, and in bad faith adopted the Brawl Stars Marks.

47.    Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, its Brawl Stars Marks and Brawl Stars Products.

48.    Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and has, and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

49.    By engaging in these actions, Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed and counterfeited the Brawl Stars Marks, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiff's expense.

50.    Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
#### (Trademark Counterfeiting)

**[15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. § 1117(b)-(c)/Lanham Act § 35]**

51.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

52.    Plaintiff is the exclusive owner of all rights and title to the Brawl Stars Marks.

53.    Plaintiff has continuously used the Brawl Stars Marks in interstate commerce since

on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

54.    Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its Brawl Stars Marks and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the Brawl Stars Marks and/or used spurious designations that are identical with, or indistinguishable from, the Brawl Stars Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

55.    Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Brawl Stars Marks through their participation in such activities.

56.    Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the Brawl Stars Marks to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or

equity.

57.    Defendants' unauthorized use of the Brawl Stars Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Brawl Stars Marks.

58.    Defendants' actions constitute willful counterfeiting of the Brawl Stars Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

59.    As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to its Brawl Stars Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Brawl Stars  Marks.

60.    Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (Infringement of Registered Trademarks)
### [15 U.S.C. § 1114/Lanham Act § 32(a)]

61.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

62.    Plaintiff has continuously used its Brawl Stars Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

63.    Plaintiff, as owner of all rights, title and interest in and to the Brawl Stars Marks, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

64.    Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the federal trademark registration for Brawl Stars Marks.

65.    Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the Brawl Stars Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell the Brawl Stars Products and/or related products bearing the Brawl Stars Marks into the stream of commerce.

66.    Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the Brawl Stars Marks and/or which are identical or confusingly similar to the Brawl Stars Marks.

67.    Defendants knowingly and intentionally reproduced, copied and colorably imitated the Brawl Stars Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

68.    Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the Brawl Stars Marks.

69.    Defendants' egregious and intentional use of the Brawl Stars Marks in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Plaintiff's Brawl Stars Products or are otherwise associated with, or authorized by, Plaintiff.

70.    Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Brawl Stars Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

71.    Defendants' continued, knowing, and intentional use of the Brawl Stars Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Brawl Stars Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

72.    As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Brawl Stars Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and the valuable Brawl Stars Marks.

73.    Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive

relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**(False Designation of Origin, Passing Off & Unfair Competition)**
**[15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**

74.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

75.     Plaintiff, as the owner of all right, title and interest in and to the Brawl Stars Marks, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

76.     The Brawl Stars Marks are inherently distinctive and/or have acquired distinctiveness.

77.     Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly similar to, and constitute reproductions of the Brawl Stars Marks and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit Products are the Brawl Stars Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by

19

consumers as to the source of such Counterfeit Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the Brawl Stars Marks, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

78.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiff's Brawl Stars Products using marks that are identical and/or confusingly similar to, or which constitute colorable imitations of the Brawl Stars Marks, Defendants have traded off the extensive goodwill of Plaintiff and its Brawl Stars Products and did in fact induce, and intend to, and will continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its Brawl Stars Marks, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

79.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute reproductions of the Brawl Stars Marks would cause confusion, mistake or deception among purchasers, users and the public.

80.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiff's Brawl Stars Products and Brawl Stars Marks.

81.     As a direct and proximate result of Defendants' aforementioned actions,

Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Brawl Stars Products and by depriving Plaintiff of the value of its Brawl Stars Marks as commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the Brawl Stars Marks.

82.    Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**(Unfair Competition)**
**[New York Common Law]**

83.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

84.    By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Defendants have traded off the extensive goodwill of Plaintiff and its Brawl Stars Products to induce, and did induce and intend and will continue to induce, customers to purchase their Counterfeit Products, thereby directly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

85.    Defendants' advertising, marketing, promoting, distributing, displaying, offering

for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

86.    Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

87.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff, and its competitive position while benefiting Defendants.

88.    As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its Brawl Stars Products in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law, and Plaintiff has been and will continue to be deprived of the value of its Brawl Stars Marks as commercial assets in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

89.    As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.    For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.    In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C.    For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of Plaintiff's federally registered Brawl Stars Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.    For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.   For an award of damages to be proven at trial for common law unfair competition;

F.   For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

  i.   manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

  ii.   directly or indirectly infringing in any manner Plaintiff's Brawl Stars Marks;

  iii.   using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Brawl Stars Marks to identify any goods or services not authorized by Plaintiff;

  iv.   using Plaintiff's Brawl Stars Marks or any other marks that are confusingly similar to the Brawl Stars Marks, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

  v.   using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation,

connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi.  engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii. engaging in any other actions that constitute unfair competition with Plaintiff;

viii. engaging in any other act in derogation of Plaintiff's rights;

ix.  from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' User Accounts or Merchant Storefronts, Defendants' Assets from or to Defendants' Financial Accounts and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

x.  from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Defendants' Assets from or Defendants'

25

Financial Accounts until further ordered by this Court;

xi. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

xii. providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts; and

xiii. instructing any other person or entity to engage or perform any of the activities referred to in subparagraphs (i) through (xii) above; and

G.    For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe Plaintiff's Brawl Stars Marks, or bear any marks that are confusingly similar to the Brawl Stars Marks;

H.    For an order of the Court requiring that Defendants deliver up for destruction to Plaintiff any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe Plaintiff's Brawl Stars Marks, or bear any marks that are confusingly similar to the Brawl Stars Marks pursuant to 15 U.S.C. § 1118;

I.    For an order from the Court requiring that Defendants provide complete

accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest;

J.    For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

K.    For an award of exemplary or punitive damages in an amount to be determined by the Court;

L.    For Plaintiff's reasonable attorneys' fees;

M.    For all costs of suit; and

N.    For such other and further relief as the Court may deem just and equitable.

### <u>DEMAND FOR JURY TRIAL</u>

Plaintiff respectfully demands a trial by jury on all claims.


Dated: March 20, 2025                                  Respectfully submitted,

                                                       EPSTEIN DRANGEL LLP


                                              BY:    _____
                                                     Gabriela N. Nastasi
                                                     gnastasi@ipcounselors.com
                                                     Jason M. Drangel (JD 7204)
                                                     jdrangel@ipcounselors.com
                                                     Ashly E. Sands (AS 7715)
                                                     asands@ipcounselors.com
                                                     Danielle S. Futterman (DY 4228)
                                                     dfutterman@ipcounselors.com
                                                     Melissa J. Levine
                                                     mlevine@ipcounselors.com
                                                     60 East 42nd Street, Suite 1250
                                                     New York, NY 10165

Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*Supercell Oy*